John A. THIBODEAU, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 86–3266.

United States Court of Appeals, Eleventh Circuit.

Oct. 5, 1987.

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

Roger M. Olsen, Acting Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, U.S. Dept. of Justice, Tax Div., Gilbert S. Rothenberg, David M. Moore, Washington, D.C., for defendant-appellant.

Geraldine R. Holloway, Yado, Salem, Keel, Nelson & Bergmann, P.A., Gerald W. Nelson, Tampa, Fla., for plaintiff-appellee.

Before ANDERSON and CLARK, Circuit Judges, and SIMPSON *, Senior Circuit Judge.

PER CURIAM:

The government appeals from denial by the trial court of its motions for directed verdict and for judgment notwithstanding the verdict. The jury found that John A. Thibodeau (taxpayer), president of a corporation that deducted taxes from its employees' wages but failed to remit them to the I.R.S., was not a "responsible officer" within the meaning of § 6672 of the Internal Revenue Code of 1954. We reverse the denial of the government's motion for judgment notwithstanding the verdict because we find that the taxpayer was a responsible officer as a matter of law. We also reverse the denial of the government's motion for directed verdict on an issue that the jury did not reach—whether the tax-

---

* Judge Simpson did not participate in the decision in this case and the decision is by quorum.

28 U.S.C. § 46; Circuit Rule 3.

payer willfully failed to account for or pay over the taxes in question.

## I. PROCEEDINGS

John A. Thibodeau filed suit against the government to recover $1,843.25 in payments made and credits applied in partial satisfaction of a $42,976.97 penalty assessed against him pursuant to § 6672 of the Internal Revenue Code of 1954 (codified at 26 U.S.C. § 6672 (1982))[1] for the failure to account for and pay over federal employment taxes. These taxes were withheld from the wages of the employees of the Thibodeau Corporation during the first two quarters of 1973. The government filed a counterclaim against the taxpayer for the unpaid balance of the assessment, plus interest and statutory additions provided by law. The case was tried before a jury,[2] which returned a verdict that the taxpayer was not a person responsible for accounting for and paying over the withheld taxes. The jury did not reach the question of whether the taxpayer willfully failed to account for and pay over the taxes. Judgment was entered for the taxpayer on the jury verdict. The government filed a timely motion for judgment notwithstanding the verdict, which was denied by an order entered February 12, 1986. The district court acknowledged that the taxpayer's case was "very marginal," but stated that the question of liability was an issue of fact that was properly submitted to the jury. The government filed a timely notice of appeal.

## II. FACTS

The Thibodeau Corporation was initially formed in 1969 by the taxpayer and his father (John L.) for the purpose of designing and building a machine for handling modular homes. Prior to forming the Thibodeau Corporation, the taxpayer worked as a salesman, selling heavy equipment. Before that, the taxpayer, who has a graduate degree in education, taught school. The taxpayer's father had designed heavy equipment and had also been in the construction business. Shortly after the Thibodeau Corporation was formed, the taxpayer's brother (Raymond) joined the family enterprise, and the corporation expanded into the businesses of construction framing, manufacturing, and installing wood framing and roof trusses for local building contractors. Raymond, who had been in the framing business since 1952, served as president of the corporation. The taxpayer served as vice-president and, at times, as secretary and treasurer. The taxpayer's father, who owned at least 51% of the stock of the corporation,[3] served as chairman of the board. The corporation's offices were located in Tampa, Florida on property owned by the taxpayer and his wife.

From 1970 until the end of 1972, the taxpayer was a salesman for the corporation, negotiating contracts and collecting accounts receivable. Record, Vol. 4 at 41, 49, 70–71, 80. In that position, the taxpayer entered into contracts with local contractors, arranged bank financing for the corporation's accounts receivable, and signed installment sales contracts and security agreements on behalf of the corporation. In addition, the taxpayer had signatory authority on all corporate checking accounts. *Id.* at 70. However, the taxpayer did not

---

1. Section 6672(a) provides:
   Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.
   26 U.S.C. § 6672(a) (1982).

2. At the close of the taxpayer's evidence, and again at the close of all evidence, the government moved for a directed verdict on the issues of responsibility and willfulness. The district court denied both motions.

3. Although the evidence is somewhat unclear, it appears that the taxpayer's father owned 51% of the authorized stock of the corporation, that the taxpayer and his brother each owned 15% of the authorized stock, and that some stock was reserved or held by the corporation as treasury stock.

have direct responsibility during this time for payment of the corporation's bills or taxes. *Id.* at 41–42, 49, 131. Those matters were handled by the taxpayer's brother and father.

In August, 1972, the taxpayer's father sold his stock in the Thibodeau Corporation to Herman Mulder, an Illinois investor, for $200,000.[4] Under the terms of the sales agreement, Mulder was to pay $50,000 in cash on or before the closing date, and the balance of $150,000 by means of a promissory note payable in installments. Mulder did not pay the balance due under the promissory note, and the taxpayer's father obtained a judgment against him in 1975.

Shortly after the sale of the stock in the Thibodeau Corporation, Mulder's two sons came to Florida to learn the business. Because neither son had any experience in the construction framing business, the taxpayer and his brother continued to work for the corporation in the same capacities that they had prior to the sale. However, in January, 1973, the taxpayer's brother and Herman Mulder had a "falling out." As a result, Raymond left the corporation and Mulder appointed the taxpayer president. The taxpayer served as president of the corporation until it ceased operation due to bankruptcy in April, 1973. From January until April, 1973, the taxpayer was also a director of the corporation and its resident agent. Record, Vol. 4 at 159–60.

The taxpayer stated that he was the person responsible for "selling, securing contracts, running [the] office, arranging for financing, [and] some hiring & firing." Exhibit 20 (Internal Revenue Service Officer's Interview with John A. Thibodeau, Feb. 24, 1976). As president, the taxpayer directed the corporation's bookkeeper to draw checks, Record, Vol. 4 at 176, and had authority to and did sign checks on behalf of the corporation. *Id.* at 54, 84, 88–89, 101. The taxpayer could issue payroll checks on his own (as could each of the Mulders), but, at the direction of Herman Mulder, all other checks required two signatures—one Mulder and one Thibodeau. *Id.* at 54, 82. After his brother left in January, 1973, the taxpayer was, of course, the only Thibodeau left at the corporation. Consequently, his signature was required on all checks (other than payroll checks) issued by the corporation.

The taxpayer knew that the corporation's officers were responsible for remitting the withheld taxes to the government. Exhibit 20, *supra.* The taxpayer testified that prior to his brother's departure as president, he had told him to "be sure the taxes are paid before the corporation gets into trouble." Record, Vol. 4 at 94. Subsequently the taxpayer was told by the corporation's accountant that the corporation was behind in its taxes. *Id.* at 81, 122, 124. Indeed, this fact was reflected in the monthly financial statements prepared by the accountant for the taxpayer, *id.* at 106, 117, which the taxpayer admitted he did not read very carefully. *Id.* at 80. In addition, the accountant testified that he told the taxpayer of the obligation to deposit the taxes withheld from employees' wages on a weekly basis.[5] *Id.* at 122. Nevertheless, the taxpayer did not pay over the withheld taxes or otherwise segregate those funds from the corporation's general accounts.

---

4. Although it appears that the taxpayer's father did not own all of the stock in the Thibodeau Corporation, *see supra* note 3, both the taxpayer and his father testified that he had sold all the stock to Herman Mulder. Record, Vol. 4 at 42, 132, 135.

5. The sum of taxes withheld constitutes a special fund in trust for the United States. 26 I.R.C. § 7501(a) (codified at 26 · U.S.C. § 7501(a)). Because the tax to be withheld by the corporation exceeded $2,000 each quarter-monthly period, the corporation was required to deposit the taxes in a depository bank within three banking days after the close of each period. 26 C.F.R. § 31.6302(c)–1(a)(1)(ii)(b) (1987).

However, the corporation's practice was not to make weekly deposits, but to pay the total balance when it filed its quarterly withholding tax returns, although this would involve penalties for failure to make timely deposits. *See* I.R.C. § 6656(a). Generally, withholding tax returns must be filed by the end of the first month following the quarter. 26 C.F.R. § 31.6071(a)–1(a)(1). Thus, the corporation's employment taxes for the last quarter of 1972 were paid at the end of January, 1973, and its taxes for the first and second quarters of 1973 were not due until the end of April 1973, and July 1973, respectively.

*Id.* at 97, 124. Instead, the taxpayer called Herman Mulder in Chicago, who told the taxpayer that he would take care of the matter by "sending money down to pay the taxes." *Id.* at 197.

The taxpayer testified that he was directed by Mulder to keep the corporation running by collecting the accounts receivable and paying off debts. *Id.* at 90–91. The taxpayer continued to sign or co-sign checks paying net wages to the corporation's employees, including himself in excess of $400,000, Exhibits 15 & 16; and he continued to pay certain creditors of the corporation, including certain suppliers and himself [6] in excess of $53,000. Exhibits 8D & 8E (and attachments). *Id.* at 83, 88, 91. These payments far exceeded the amount of withheld taxes, which was $42,976.97. The tax liability remained outstanding when the taxpayer, on behalf of the corporation, consented to an order of adjudication of bankruptcy on April 17, 1973.

### III. DISCUSSION

In reviewing the denial of the government's motion for judgment notwithstanding the verdict, we consider all of the evidence in the light most favorable to the party opposed to the motion. *Carroll Kenworth Truck Sales, Inc. v. Kenworth Truck Co.*, 781 F.2d 1520, 1525 (11th Cir. 1986). In this case, we find no disputed facts regarding whether the taxpayer was a responsible person within the meaning of § 6672, and we conclude as a matter of law that he was a responsible officer of the Thibodeau Corporation during the first and second quarters of 1973. However, the statute imposes liability only upon (1) a responsible person, who has (2) willfully failed to perform a duty to collect, account, or pay over the taxes. *George v. United States*, 819 F.2d 1008, 1011 (11th Cir.1987); *Mazo v. United States*, 591 F.2d 1151, 1153 (5th Cir.), *cert. denied*, 444 U.S. 842, 100

S.Ct. 82, 62 L.Ed.2d 54 (1979).[7] Thus, we consider also whether the district court erred in denying the government's motion for directed verdict on the issue of willfulness. A motion for directed verdict should be granted only when, viewing the evidence in its entirety and drawing all reasonable inferences in favor of the nonmoving party, reasonable jurors could not reach a contrary verdict. *Dancey Co., Inc. v. Borg-Warner Corp.*, 799 F.2d 717, 719 (11th Cir.1986). We find the evidence of the taxpayer's willfulness overwhelming and believe that reasonable jurors could not find otherwise. We conclude that the taxpayer has violated § 6672.

### 1. *Responsible Person.*

■ A responsible person within the meaning of § 6672 includes an officer or employee of a corporation who is under a duty to collect, account for, or pay over the withheld tax. *Mazo*, 591 F.2d at 1153. Responsibility is a "matter of status, duty and authority, not knowledge." *Id.* at 1156. Indicia of responsibility includes the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees. It is undisputed that more than one person may be a responsible officer of the corporation under § 6672. *Roth v. United States*, 779 F.2d 1567, 1571 (11th Cir.1986).

■ The government argues that the taxpayer possessed all the recognized indicia of responsibility and was a responsible officer as a matter of law. The government points out that at all times, the taxpayer was an officer of the corporation who had signatory authority on all corporate accounts. Prior to becoming president, the taxpayer was in charge of sales and responsible for securing contracts, collecting accounts receivable, arranging for

---

**6.** The corporation leased the building out of which it operated, as well as the land upon which the building was situated, from the taxpayer and his wife. Record, Vol. 4 at 50–51. The corporation continued to pay rent to the taxpayer and his wife through March, 1973. *Id.* at 86.

**7.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

bank financing, and hiring and firing some employees. During the first two quarters of 1973, the taxpayer served as president, director, and resident agent of the corporation. The government claims that, as president, the taxpayer was responsible for running the corporation on a daily basis, including the hiring and firing of all employees. During this time, his signature was one of two required on all checks other than payroll, and he had individual signatory authority on the payroll account. The government contends that under *Roth*, 779 F.2d 1567, the taxpayer is not removed from responsibility by claiming that he could not pay the taxes, or any bills, without the approval of Herman Mulder. The government also maintains that the taxpayer is not relieved from responsibility because two signatures were required on most checks, or because he might have lost his job had he refused to co-sign the checks. *See id.*

The taxpayer responds that the issue is whether he exercised "significant control" over corporate affairs. The taxpayer contends that despite his title and signatory authority, he was not a responsible officer within the meaning of § 6672. The taxpayer emphasizes that he had nothing to do with payroll or tax payments, but merely routinely signed all checks and forms presented to him; that Herman Mulder owned all of the corporation's stock; and that his main responsibility, both before and after the change in ownership, was sales. The taxpayer concedes that he possessed status and duty, but claims that he lacked authority, and thus was not a responsible person.

We hold that, as a matter of law, the taxpayer was a responsible person within the meaning of § 6672. As stated above, the taxpayer was the president, director, and the resident agent of the corporation during the first two quarters of 1973. The taxpayer stated that he was responsible for

running the office, selling, securing contracts, arranging financing, and some hiring and firing. Exhibit 20, *supra.* He certainly knew more about the daily affairs of the corporation than did either of the Mulder brothers, or their father Herman, who remained in Chicago. Even prior to becoming president, the taxpayer was responsible for negotiating contracts, collecting accounts receivable and securing financing.

Although the taxpayer reported to Herman Mulder and served at his will, this does not affect his responsibility to collect, account for, or pay over to the government the withheld taxes.[8] Two cases, which hold that an otherwise responsible person cannot be relieved of this obligation when directed by another person not to pay the taxes, support the government's position. In *Roth,* 779 F.2d 1567, this court held that a responsible person is not relieved of the obligation to remit withheld taxes by contrary instructions from a superior officer. Although the taxes may be in the corporation's bank account, they constitute trust funds of the United States, *see* I.R.C. § 7501 (codified at 26 U.S.C. § 7501), and no instruction by the owner or CEO of a corporation may "effectively bar an otherwise responsible officer from paying these funds in accordance with the law." *Roth,* 779 F.2d 1572. Similarly, in *Howard v. United States,* 711 F.2d 729 (5th Cir.1983), a case which is not binding precedent for us, the court held that an otherwise responsible person within the meaning of the statute remained liable for the failure to remit withheld taxes, despite contrary instructions issued by the CEO. The court stated:

> Howard had the status, duty and authority to pay the taxes owed, and would only have lost that authority after he had paid them. Authority to pay in this context means *effective power* to pay. That Howard had this authority is demonstrated by the fact that he did issue small checks

**8.** Although § 6672 refers to "(a) any person required to collect, truthfully account for and pay over any tax imposed by *this title,*" the Supreme Court has interpreted these three obligations as disjunctive. *Slodov v. United States,* 436 U.S. 238, 246–49, 98 S.Ct. 1778, 1785, 56 L.Ed.2d 251

(1978). Thus, liability may be imposed upon a responsible person who willfully fails to collect, account for, or pay over the taxes at issue. *See George v. United States,* 819 F.2d 1008, 1011 n. 3 (11th Cir.1987).

without Jennings' approval on a number of occasions. Had Jennings fired Howard for paying the taxes, Howard would at least have fulfilled his legal obligations.

*Id.* at 734–35 (citations omitted) (footnote omitted) (emphasis in original). The fact that Howard had been relieved of his duties for several weeks during the relevant quarters did not change the court's conclusion. *Id.* at 734 n. 4. We find the instant case indistinguishable from *Roth* and *Howard.*

We find the other cases cited by the taxpayer for support to be unpersuasive and easily distinguishable. In *Dudley v. United States,* 428 F.2d 1196 (9th Cir.1970), the Ninth Circuit found that the taxpayer ceased to be a responsible person when he was effectively ousted from his job as president and where the uncontradicted evidence showed an almost complete lack of control. *Id.* at 1201–02. Although the taxpayer may have remained in control of certain facets of the corporation, the court emphasized that he had no control over the issuance of checks. *Id.* at 1202. In the instant case, the taxpayer assumed greater control over the corporation's affairs, exercised significant authority over the issuance of checks, and presented no evidence of ouster prior to bankruptcy.

In *McCullough v. United States,* 462 F.2d 588 (5th Cir.1972), the old Fifth Circuit held that the government failed to prove that the corporation's president had control over sufficient funds with which to discharge a tax liability that was incurred before he assumed control. In the absence of such funds, the taxpayer could not be considered a person responsible for the "payment" of the overdue taxes. However, this decision has been limited by *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

We conclude that the taxpayer possessed the status, duty and authority to make him a responsible officer within the meaning of the statute.

2. *Willfulness.*

■ The willfulness determination is generally reserved for the jury. The ques-

tion is "necessarily directed to the state of the responsible person's mind, [and is] a subjective determination." *Mazo,* 591 F.2d at 1157. However, the issue of willfulness does not present a jury question in all cases. *See, e.g., id.* (affirming summary judgment for the government); *Newsome v. United States,* 431 F.2d 742 (5th Cir. 1970) (reversing district court's finding of lack of willfulness); *Hewitt v. United States,* 377 F.2d 921 (5th Cir.1967) (affirming directed verdict for the government). In this case, the taxpayer's willfulness does not present a jury question.

■ Once it is established that a taxpayer is a responsible person, the burden of proving lack of willfulness is on the taxpayer. *Mazo,* 591 F.2d at 1155. The former Fifth Circuit defined "willfully" as "meaning, in general, a voluntary, conscious and intentional act." *Id.* at 1154. The willfulness requirement is met if there is evidence that the responsible officer had knowledge of payments to other creditors after he was aware of the failure to remit the withheld taxes. *Id.* at 1157. The willfulness requirement is also met if the responsible officer shows a "reckless disregard of a known or obvious risk that trust funds may not be remitted to the government...." Irrespective of whether a responsible person disburses the withheld taxes to a creditor other than the government *before or after* the due date, the behavior is considered willful. *Newsome,* 431 F.2d at 745. In *Newsome,* the court stated:

In many of these cases, a responsible officer's "willfulness" is established by the knowing preference of other corporate creditors over the United States *after* the due date for the corporation to remit the withheld taxes. However, liability under section 6672 can also be premised upon use of withheld funds for other corporate purposes *before* the date for the corporation to pay over the funds.

. . . .

The responsible officer's actions before the due date for payment of the withheld taxes satisfies the "willfulness" requirement under section 6672: when the re-

sponsible officer ... knows that the withheld funds are being used for other corporate purposes, regardless of his expectation that sufficient funds will be on hand on the due date for payment over to the government. Of course, the officer is only liable under section 6672 if the corporation does not pay over the withheld taxes at the date prescribed in the regulations. However, he subjects himself to liability under 6672 when he voluntarily and consciously "risks" the withheld taxes in the operation of the corporation, and subsequently the corporation is unable to remit the withheld taxes.

*Id.* at 745–46 (footnote omitted) (emphasis in original).

■ In this case, the taxpayer signed checks to creditors, including himself, in excess of $53,000; and to employees, including himself, in excess of $400,000 during a period in which a tax liability of $42,976.92 ultimately accrued. The taxpayer argues that the checks he signed were necessary to keep the corporation operating as a going concern, but the government cannot be made an unwilling partner in a business experiencing financial difficulties. Additional evidence of the taxpayer's willfulness is his failure to segregate the withheld taxes. Once withheld from employees' paychecks, the taxes constitute a special fund held in trust for the United States. *See* I.R.C. § 7501; *Roth,* 779 F.2d at 1572. Using these funds instead to finance the corporation not only increases the risk that the corporation will be unable to remit the taxes when due, but constitutes flagrant violation of the law. Taxpayer's expectation that sufficient funds would be available at the end of the tax quarter does not make his behavior any less willful. It is also irrelevant that the corporation declared bankruptcy before the taxes were actually due for either quarter.

We reject the taxpayer's claim that the amount paid by the corporation at the end of January, 1973 (during his tenure as president) to cover its tax liability for the fourth quarter of 1972 were funds acquired after January, 1973 which should have been applied to the deficiency for that year under *Slodov,* 436 U.S. 238, 98 S.Ct. 1778. The taxpayer interprets *Slodov* to mean that where there has been a change of control prior to the expiration of a tax quarter, or at a time when a tax delinquency for past quarters already exists, a responsible person does not act willfully by failing to apply after acquired funds to the pre-existing tax obligation. However, the taxpayer has misread *Slodov.* The Supreme Court held that a responsible person does not act willfully when he satisfies creditors other than the government only "when at the time he assumed control there were no funds with which to satisfy the tax obligation and the funds thereafter generated are not directly traceable to collected taxes referred to by [§ 6672] ..." *Id.* at 259–60, 98 S.Ct. at 1791.

In the instant case, the corporation had sufficient funds during the first and second quarters of 1973 with which to pay the delinquent taxes. Instead, the taxpayer preferred other creditors, including himself, to the government. Moreover, the January, 1973 payment was consistent with *Slodov,* which requires that previously acquired funds be used to pay off the delinquency. The taxpayer did not argue that the taxes were paid with after acquired funds. *Slodov* makes it clear that a person need only be responsible for collecting, accounting for, *or* paying over the withheld taxes.[9] 436 U.S. at 246–49, 90 S.Ct. at 1785. When the taxpayer took over as president in January, 1973, the corporation had a pre-existing tax liability for the fourth quarter of 1972 that he was legally required to pay by the end of January, 1973.[10] Once the taxpayer became president, he was obviously also required to collect, account for, and pay over the taxes then currently being withheld. As discussed above, *Slodov* relieves a taxpayer of this obligation only in certain limited circumstances, none of which apply here.

Drawing all reasonable inferences in favor of the taxpayer, we conclude that rea-

**9.** *See supra* note 8.

**10.** *See supra* note 5.

sonable jurors would have been required to find that the taxpayer willfully failed to perform his duty to collect, account for, and pay over the withheld taxes.

## IV. CONCLUSION

We find that the taxpayer was a responsible officer within the meaning of § 6672 as a matter of law. We have carefully reviewed the record and also find that the taxpayer's actions were clearly willful under the controlling legal principles. Thus, this issue does not present a jury question. The judgment is therefore reversed and the case is remanded to the district court with directions that it enter judgment for the government notwithstanding the verdict on the issue of responsibility, and that it grant the government's motion for a directed verdict on the issue of willfulness.

REVERSED and REMANDED.