**In the Matter of David W. PIPPINGER, Debtor.**

**David W. PIPPINGER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 88–52542.
Adv. No. 90–5018.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Aug. 3, 1990.

Ed S. Sell, III, Kenneth B. Banks, Macon, Ga., for plaintiff.

Janice Rovner, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

ROBERT F. HERSHNER, Jr., Chief Judge.

### STATEMENT OF THE CASE

David W. Pippinger, Debtor, Plaintiff, filed a "Complaint to Determine Tax Liabil-

ity of Debtor Under Section 505 of the Bankruptcy Code and for Temporary Injunction" on February 15, 1990. Plaintiff asks the Court to determine his liability for certain delinquent employment withholding taxes. The United States of America, Defendant, filed a timely answer to the complaint. The complaint came on for trial on July 3, 1990. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

## FINDINGS OF FACT

Plaintiff was one of four founding shareholders and directors of Retsod, Inc.[1] Retsod was formed in June of 1982 to develop and operate Po Folks restaurants in California. Plaintiff lived in Macon, Georgia, and saw his involvement with the corporation as simply being an investor. Plaintiff initially owned thirty percent of the stock of Retsod. Plaintiff had signatory authority on the corporate bank account.

Ronnie Doster was elected president of Retsod and moved to California to open and operate the corporation's first restaurant. Mr. Doster determined that the corporation needed additional funds and, with the approval of the other shareholders, persuaded Nettie Lee Milam to become a partner with Retsod in the first restaurant. Ms. Milam initially paid $60,000 to become a partner.

The first restaurant opened, and Mr. Doster managed the day-to-day affairs. In September of 1983, Mr. Doster hired James Hurst as director of operations. Mr. Hurst had prior experience in the restaurant business, including experience with other Po Folks restaurants. Mr. Doster did not have prior restaurant experience. The parent company of the Po Folks restaurants required that its franchises have managers with prior restaurant experience.

The other shareholders were displeased with Mr. Doster's performance and re-moved him as president in April of 1985. Mr. Doster remained on the board of directors and was to seek new locations for restaurants and to promote the business. Mr. Doster was very hostile about being fired and tried to disrupt Retsod's business operations. Mr. Hurst was appointed vice president of operations, elected to the board of directors, and issued stock in the corporation. Plaintiff was elected president and Mr. Hurst reported to him.

Ms. Milam filed a complaint in the state court of California asking that a receiver be appointed for the partnership. In October of 1985, the state court declined to appoint a receiver but ordered Retsod to segregate the receipts and disbursements of the two Po Folks restaurants in Sacramento, California.[2] The state court also required that all checks drawn on the Sacramento restaurants be countersigned by both Retsod and a "check signer" for Ms. Milam. This requirement seriously disrupted Retsod's operation and made financial planning difficult. Retsod's bookkeeper sometimes prepared two hundred checks per week, which were taken to the check signer. The check signer frequently waited two weeks before signing the checks. Some checks were never signed.

Retsod's bookkeeper prepared the corporation's employment withholding tax checks for the first two quarters of 1986. The check signer refused to sign the checks because there was not enough money to pay all the bills. Mr. Hurst spent much of his time either in court or in the office of Retsod's attorney trying to fight the court actions of Mr. Doster and Ms. Milam.

Retsod did not pay to the Internal Revenue Service (IRS) certain employment withholding taxes during the first, second, and third quarters of 1986 before filing its Chapter 11 bankruptcy petition on July 17, 1986. These taxes are commonly referred to as "trust fund taxes."[3] Plaintiff knew

1. The other founding shareholders and directors were Ronnie Doster, Loyde Peavy, and Felder Taylor.

2. The third Po Folks restaurant that Retsod owned in Rancho Cordova, California, was not involved in the state court litigation.

3. Trust fund taxes are social security and federal income taxes withheld by an employer from the wages of the employees. These funds are held in trust for the United States. The Internal Revenue Code imposes personal liability on responsible corporate officers who fail to remit

that Retsod was not paying the trust fund taxes during the first quarter of 1986. Plaintiff asserts that each week he told Mr. Hurst that these taxes must be paid. Plaintiff asserts that Mr. Hurst kept putting him off by assuring him that the taxes would be paid the next week. Plaintiff knew that other creditors were being paid.

Plaintiff decided to pay personally the first quarter taxes that were due on April 30, 1986. Plaintiff understood the amount of taxes owed was $60,000. Plaintiff personally borrowed $60,000 and "wired" this amount to Retsod's bank account in California on April 30, 1986. Plaintiff asserts that he told Mr. Hurst to use this money to pay the trust fund taxes. Plaintiff asserts that he understood that Mr. Hurst used the wired funds to pay the taxes and did not follow up or require proof that the taxes in fact had been paid.

The wired funds were deposited into Retsod's checking account instead of into its attorney's trust account. The bank used most of the wired funds to pay creditors holding checks. Mr. Hurst asserts that Plaintiff telephoned Retsod's bookkeeper on April 30 and learned that the wired funds had been used to pay creditors rather than taxes. He asserts that he discussed this matter with Plaintiff about two or three days later.

Retsod also did not pay the trust fund taxes during the second and third quarters of 1986 before it filed its Chapter 11 bankruptcy petition on July 17, 1986. Plaintiff asserts that he felt satisfied that Mr. Hurst was paying these taxes until Mr. Hurst confessed to Retsod's attorney on July 9,

1986, that these taxes had not been paid. During the first and second quarters of 1986, Plaintiff talked with Mr. Hurst several times each week. Sometimes they talked several times each day. They regularly discussed Retsod's finances and decided which bills to pay. The Court is persuaded that Plaintiff knew the taxes were not being paid.

Retsod filed a petition under Chapter 11 of the Bankruptcy Code on July 17, 1986. The IRS notified Plaintiff of its intention to hold him liable for the delinquent trust fund tax liability of Retsod under section 6672(a) of the Internal Revenue Code.[4] The alleged tax liability arose from the failure of Retsod to pay prepetition withholding taxes. Plaintiff filed a petition under Chapter 7 of the Bankruptcy Code on December 14, 1988.

Plaintiff filed this complaint to determine his liability for the trust fund taxes under section 505(a)(1) and (a)(2) of the Bankruptcy Code.[5] On June 7, 1990, the IRS published a "Certificate of Assessment and Payments" showing Plaintiff's account balance as $142,557.02.

## CONCLUSIONS OF LAW

The Internal Revenue Code requires employers to withhold from their employees' pay checks money representing the employees' personal income taxes[6] and social security taxes.[7] The employer holds these funds in trust for the United States.[8] These funds are commonly referred to as "trust fund taxes." If the employer fails to pay over the trust fund taxes, the IRS

---

these funds to the government. *See United States v. A & B Heating & Air Conditioning, Inc. (In re A & B Heating & Air Conditioning, Inc.),* 861 F.2d 1538, 1538–39 n. 1 and 2 (11th Cir. 1988).

4. I.R.C. § 6672(a) (West Supp.1990).

5. 11 U.S.C.A. § 505(a)(1), (a)(2)(A) (West 1979). This section provides:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not con-

tested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—
(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

11 U.S.C.A. § 505(a)(1), (a)(2)(A) (West 1979).

6. I.R.C. § 3102(a) (West 1989).

7. I.R.C. § 3402(a) (West 1989).

8. I.R.C. § 7501(a) (West 1989).

may collect an equivalent amount directly from officers or employees of the employer who were responsible for collecting the tax. *United States v. Energy Resources Co.,* —— U.S. —— 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

Section 6672(a) of the Internal Revenue Code[9] provides:

> (a) General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of subchapter A of chapter 68 for any offense to which this section is applicable.

I.R.C. § 6672(a) (West Supp.1990).

Section 6672(a) was designed to assure compliance by the employer with its obligation to withhold and pay the sums withheld. This is accomplished by subjecting the employer's officials responsible for the employer's decisions regarding withholding and payments to civil and criminal penalties for the employer's delinquency. *Slodov v. United States,* 436 U.S. 238, 247, 98 S.Ct. 1778, 1785, 56 L.Ed.2d 251 (1978).

The statute imposes liability only upon (1) a responsible person, who has (2) willfully failed to collect, account for, or pay over the trust fund taxes. *Thibodeau v. United States,* 828 F.2d 1499, 1503 (11th Cir.1987).

### (1) RESPONSIBLE PERSON.

■ In *Thibodeau v. United States,*[10] the United States Court of Appeals for the Eleventh Circuit stated:

> A responsible person within the meaning of § 6672 includes an officer or employee of a corporation who is under a duty to collect, account for, or pay over

the withheld tax. Responsibility is a "matter of status, duty and authority, not knowledge." Indicia of responsibility includes the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees. It is undisputed that more than one person may be a responsible officer of the corporation under § 6672.

828 F.2d at 1503.

A person is responsible if he has a duty to perform any of the enumerated functions—collect, account for, or pay over. The penalty is not limited to persons who are in a position to perform all three duties. *Slodov v. United States,* 436 U.S. at 250, 98 S.Ct. at 1786–87; *Mazo v. United States,* 591 F.2d 1151, 1153 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

Plaintiff was president, a director, and a shareholder of Retsod during the first, second, and relevant part of the third quarters of 1986. He had signatory authority on the corporate bank account even though he never signed any checks. He talked with Mr. Hurst, the vice president for day-to-day operations, several times each week and frequently on a daily basis. He had the ability to fire Mr. Hurst. He was significantly involved in the decision making process of Retsod. Plaintiff does not seriously contend that he is not a responsible person. The Court is persuaded that Plaintiff is a responsible person under section 6672.

### (2) WILLFULNESS.

■ In *Thibodeau v. United States,* the circuit court stated:

> Once it is established that a taxpayer is a responsible person, the burden of proving lack of willfulness is on the taxpayer. *Mazo,* 591 F.2d at 1155. The former Fifth Circuit defined "willfully" as "meaning, in general, a voluntary, conscious and intentional act." *Id.* at 1154. The willfulness requirement is

---

9. I.R.C. § 6672(a) (West Supp.1990).

10. 828 F.2d 1499 (11th Cir.1987).

met if there is evidence that the responsible officer had knowledge of payments to other creditors after he was aware of the failure to remit the withheld taxes. *Id.* at 1157. The willfulness requirement is also met if the responsible officer shows a "reckless disregard of a known or obvious risk that trust funds may not be remitted to the government...." Irrespective of whether a responsible person disburses the withheld taxes to a creditor other than the government *before or after* the due date, the behavior is considered willful. *Newsome [v. U.S.],* 431 F.2d [742] at 745 [(1970).] In *Newsome,* the court stated:

> In many of these cases, a responsible officer's "willfulness" is established by the knowing preference of other corporate creditors over the United States *after* the due date for the corporation to remit the withheld taxes. However, liability under section 6672 can also be premised upon use of withheld funds for other corporate purposes *before* the date for the corporation to pay over the funds.
>
> . . . .
>
> The responsible officer's actions before the due date for payment of the withheld taxes satisfies the "willfulness" requirement under section 6672: when the responsible officer ... knows that the withheld funds are being used for other corporate purposes, regardless of his expectation that sufficient funds will be on hand on the due date for payment over to the government. Of course, the officer is only liable under section 6672 if the corporation does not pay over the withheld taxes at the date prescribed in the regulations. However, he subjects himself to liability under 6672 when he voluntarily and consciously "risks" the withheld taxes in the operation of the corporation, and subsequently the corporation is unable to remit the withheld taxes.

828 F.2d at 1505–06.

Under no circumstances does the delegation of the obligation to pay the taxes relieve the responsible person of liability. Once a responsible person discovers there is a deficiency, he has an obligation to remedy the situation if the means are within his control. *George v. United States,* 819 F.2d 1008, 1012 (11th Cir.1987).

The willfulness requirement can be met if the responsible person (1) had knowledge of payments to other creditors after he was aware of the failure to remit the withheld taxes, or (2) shows a reckless disregard of a known or obvious risk that trust fund taxes may not be remitted to the IRS. *Thibodeau v. United States,* 828 F.2d at 1505.

### (A) *First Quarter, 1986*

Plaintiff knew that withholding taxes for this quarter were not being remitted and that other creditors were being paid. Plaintiff knew that Retsod was using the withheld taxes to pay its operating expenses. Plaintiff knew that Mr. Hurst was "putting him off" each week because there was not enough money to pay all debts. Plaintiff knew that Retsod was in severe financial difficulty. There was an obvious risk that the trust fund taxes would not be remitted to the IRS.

Plaintiff tried to pay all or part of the taxes on April 30, 1986, using his personal funds. Unfortunately, his "wired" funds were deposited into Retsod's checking account and quickly withdrawn by creditors holding corporate checks.

In *Newsome v. United States,*[11] the former United States Court of Appeals for the Fifth Circuit stated:

> [A responsible person's duty], for purposes of section 6672 liability, is a continuing one which arises when the federal income and social security taxes are withheld from employees' wages and ends when such funds are paid over to the United States.

431 F.2d at 746 (footnote omitted).

Plaintiff's liability does not end until the taxes are paid over to the IRS. This payment has not been made, and Plaintiff remains liable.

The California state court told Mr. Hurst to pay the bills for rent, food, labor, and

---

**11.** 431 F.2d 742 (5th Cir.1970).

utilities or a receiver would be appointed. The court order provides: "However, it is the Court's intention by this order that all purveyors shall be paid promptly." *Milam v. M & R Partnership*, No. 330355 (Superior Court of California, County of Sacramento, October 21, 1985) (order segregating funds and requiring co-signatures on checks). The state court order contemplated payment of day-to-day operating expenses. It did not address the obligation to properly pay over the trust fund taxes.

Thus, the state court order is no defense in this adversary proceeding. A mistaken belief on the part of the responsible person that the funds need not or cannot be paid does not render the failure to pay unwillful. *Teel v. United States*, 529 F.2d 903, 906 (9th Cir.1976). Retsod used the withheld taxes to pay its operating expenses. Although the checks issued to creditors were necessary to keep the corporation operating as a going concern, the government cannot be made an unwilling partner in a business experiencing financial difficulties. *Thibodeau v. United States*, 828 F.2d at 1506.

The Court is persuaded that Plaintiff has not demonstrated a lack of willfulness as to the first quarter of 1986 trust fund taxes.

(B) *Second and Third Quarter, 1986, Delinquent Taxes.*

Plaintiff testified that "going into the second quarter of 1986, I felt satisfied that things were going on course." He asserts that he did not learn until July 9, 1986, that the first quarter taxes had not been paid and that the second and third quarter taxes were not being paid. Plaintiff received financial reports on Retsod during these quarters. Plaintiff knew that the corporation was paying other creditors during the second and third quarters.

The Court is persuaded that Plaintiff showed reckless disregard of a known or obvious risk that trust fund taxes would not be remitted to the IRS. Plaintiff knew that the first quarter taxes were not timely paid by Retsod. He knew that Mr. Hurst was still in charge and that the corporation was in serious financial condition. He did not require anything, except perhaps Mr. Hurst's oral assertions, that the trust fund taxes would be paid.

The Court is persuaded that Plaintiff has not carried his burden of proving a lack of willfulness.

An order in accordance with this memorandum opinion will be entered this date.