The DANCEY COMPANY, INC., a
Florida corporation,
Plaintiff-Appellant,

v.

BORG–WARNER CORPORATION, a
Delaware corporation,
Defendant-Appellee.

No. 85–3944.

United States Court of Appeals,
Eleventh Circuit.

Sept. 19, 1986.

John R. Bush, Susan B. Morrison, Tampa, Fla., for plaintiff-appellant.

Nathan D. Goldman, Diana L. Fuller, Tampa, Fla., for defendant-appellee.

Before HILL and VANCE, Circuit Judges, and BROWN *, Senior Circuit Judge.

### CORRECTED OPINION

HILL, Circuit Judge:

### FACTS

This diversity action arose when appellant The Dancey Company (Dancey), a central warehouse distributor for Borg-Warner Corporation (Borg-Warner), sued Borg-Warner for negligent and intentional misrepresentation, seeking punitive damages, and for breach of express and implied warranties. The alleged conduct concerned apparently defective duel-fuel carburetors which Dancey marketed for Borg-Warner. Dancey appeals a directed verdict on the misrepresentation and punitive damages counts and a jury finding of lack of timely notice, resulting in no liability, on the warranty counts.

Appellant Dancey's complaint revolves around an October, 1979 Borg-Warner memorandum to its central warehouse distributors announcing the introduction of a new duel-fuel carburetor which it called the Acucarb. The memorandum stated in pertinent part:

> After many months of intensive investigation and extensive testing of various designs, Century is proud to introduce the most efficient and universally adaptable propane carburetor ever offered to the industry.

Accompanying that announcement was an invitation to the central warehouse distributors to attend the "formal introduction of this unique system Friday, December 7, 1979 . . . .," and a request that the central warehouse distributors "be sure to bring your purchase orders so that we can enter them into the production schedule for 1980's first quarter deliveries." By a memorandum dated November 27, 1979 the introductory meeting was rescheduled to January 17 and 18, 1980 because Borg-Warner

had determined that the basic production units would not be available by December.

Before this meeting took place, Dancey solicited over 20,000 orders from its customers for the Acucarb. Subsequently, when Dancey commenced distributing these carburetors, it was deluged with a myriad of customer complaints regarding the performance of the carburetor. Dancey reported these complaints to Borg-Warner, who undertook various efforts to correct the problems. Numerous conversations followed between officials at Dancey and Borg-Warner regarding the continued customer complaints and how best to remedy the situation surrounding the defective carburetors. Apparently, problems continued with the device, and on September 3, 1980 Dancey notified Borg-Warner that it was canceling its blanket order for the Acucarb, and that it would not be accepting further shipments of the product.

Dancey subsequently instituted suit in United States district court claiming that Borg-Warner either deliberately or negligently, thus fraudulently, misrepresented the testing of the Acucarb, leading Dancey into a ruinous reliance on Borg-Warner's touting of the defective product. The District Court granted Borg-Warner's request for a directed verdict on the misrepresentation counts on the grounds that Borg-Warner's claims in the memorandum were mere "puffing" and that the delay in the introductory meeting so that tooling could be completed sufficiently apprised Dancey that no testing had been conducted on production units. The district judge also dismissed Dancey's punitive damages claim. Dancey's breach of warranty claims were submitted to the jury, which found that Borg-Warner had breached express and implied warranties to Dancey's damage, and that Borg-Warner had not disclaimed them. However, no liability on the part of Borg-Warner followed as the jury determined that Dancey had not timely informed Borg-Warner of the breach.

---

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

## DISCUSSION

■ We address first the issue of whether the district court improperly granted Borg-Warner's directed verdict motion as to the misrepresentation claim. A motion for directed verdict should be granted only when, viewing the evidence as a whole and all reasonable inferences in a light most favorable to the nonmovant, reasonable jurors could not reach a contrary verdict. *Sun-Fun Products, Inc. v. Suntan Research and Development, Inc.,* 656 F.2d 186, 189 (5th Cir. Unit B 1981).[1] We find the evidence presented sufficient such that directed verdict on the misrepresentation count was improper.

■ For a plaintiff to prevail on a fraudulent misrepresentation claim in Florida that plaintiff must establish (1) a misrepresentation of a material fact; (2) knowledge by the misrepresentator, or representations made without knowledge of the truth or falsity of those representations, or representations made in circumstances where the misrepresentator should have known of the falsity of those representations; (3) an intention to induce reliance; and (4) resulting injury to the party acting in justifiable reliance on those misrepresentations. *Joiner v. McCullers,* 158 Fla. 562, 28 So.2d 823 (1947). The focus of the misrepresentation here alleged concerns Borg-Warner's statement in the October 1979 memorandum that "extensive testing" had preceded introduction of the Acucarb.

Looking initially to the first element of the fraudulent misrepresentation claim, whether there existed a misrepresentation of a material fact, we note that at trial Borg-Warner maintained, and the district judge agreed, that the statement regarding testing was true when uttered and thus no misrepresentation occurred. The contention and finding were based on evidence presented that Borg-Warner had extensively tested 14 hand-built prototype duel-fuel carburetors before circulation of the memorandum. Thus, there had in fact been "extensive testing" as represented in the mem-

orandum. Further, even if the statement regarding testing were held to apply to the later production models, that statement amounted to nothing more than a promise of future performance, not actionable, as no production model existed at the time the statement was made. Borg-Warner contends Dancey was aware no production models existed, and thus could not have afforded the memorandum the interpretation which Dancey now alleges, supporting this conclusion by reference to the late November, 1979 memorandum changing the date for introduction of the Acucarb to January, 1980 due to unavailability of the production units. This, argues Borg-Warner, clearly should have apprised Dancey that the testing referred to in the October memorandum was not of production units.

However, we find sufficient evidence was presented at trial of a misrepresentation of a material fact such that directed verdict should not have been granted on this claim. While it is true that no production models existed at the time of the October, 1979 memorandum, a jury could well conclude that the language of that document contemplated presently existing production models. Borg-Warner's instructions to its central warehouse distributors to bring orders to the January, 1980 sales meeting reenforces such a conclusion. The very act of taking orders as Borg-Warner did connotates the existence of a production model. The late November, 1979 memorandum rescheduling the introductory meeting is not determinative as the mere fact that production units were unavailable for distribution does not necessarily dictate that production units had not been run and subjected to adequate testing.

While Borg-Warner contends that the representation concerned only the experimental models, Borg-Warner was obviously not offering its experimental models to the central warehouse distributors when it sent out its October 1979 memorandum. Dancey had a right to rely that the product they were purchasing was not a hand-built

---

**1.** This circuit has adopted as precedent all decisions of Unit B of the former Fifth Circuit.

*Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982).

prototype but a fully tested production model. Significantly, the experimental models in fact differed considerably from the units Borg-Warner ultimately offered for sale through the October memorandum.

Additional evidence further supports our conclusion that the "misrepresentation" nature of the testing claim was a question for the trier of fact. Evidence was introduced as to what constituted sufficient testing in the industry and thus what Dancey could properly infer from the representations made in the October, 1979 memorandum. Expert testimony proffered by Dancey indicated much less testing with respect to the Acucarb than was customary in the introduction of new products and that the carburetor was introduced earlier in the testing process than was usual.[2] Nothing in the October, 1979 memorandum suggested to central warehouse distributors that the Acucarb was less tested than should have been expected.

We have recited the evidence tending to support this element of appellant's fraud claim. We recognize, however, that contrary evidence on this issue was presented and do not intend to foreclose a determination by the trier of fact on remand that there was no material misrepresentation of fact. Rather, we find merely that a jury question was presented on this issue.

Likewise, sufficient evidence was presented as to the other elements of the misrepresentation claim to avoid directed verdict. It may be that Borg-Warner was in a position to know that its statements regarding testing of a production model were false. At the very least, Dancey presented evidence that Borg-Warner made the "extensive testing" representation without knowledge of its truth, when Borg-Warner had a duty to obtain such knowledge prior to uttering the representation. *See Emerson Electric Co. v. Farmer*, 427 F.2d 1082, 1087 (5th Cir.1970). As to whether the statements were intended to induce reliance, Borg-Warner's instructions to bring firm orders to the January meeting could hardly be construed as meaning anything else. Other evidence indicated Dancey was not equipped to verify Borg-Warner's "testing" claims, and was forced to rely upon Borg-Warner's representations of that matter. The unique nature of the relationship between Borg-Warner and Dancey, Dancey having acted as a Borg-Warner central warehouse distributor for over 20 years, further supports the existence of this reliance. Dancey apparently did in fact rely on the statements, soliciting substantial orders from its customers, which orders were in large part cancelled by its customers at a later time. Evidence was introduced of substantial damages suffered by Dancey due in large part to customer dissatisfaction resulting from problems with the Acucarb. Viewing the evidence as a whole, reasonable jurors could have differed as to whether Dancey established a claim of fraudulent misrepresentation. We thus reverse the district court's directed verdict.

■ In light of our determination on the misrepresentation claim, the district court's directed verdict as to the punitive damages claim must also be reversed. Punitive

---

**2.** Professor Jay A. Bolt, a Professor Emeritus of Mechanical Engineering at the University of Michigan and expert in the field of carburetion, testified that "all the evidence indicates that a final design that was satisfactory for use had not yet been completed." In fact, he testified that he could detect no "evidence of anything like complete or thorough testing or hardly any testing at all." Peter Hoekstra, a mechanical products engineer and former Borg-Warner senior project engineer, testified that there are several levels of test which a manufacturer generally performs prior to production and marketing of a new carburetion product. The pilot run is the manufacturer's first attempt to build parts that are production manufactured and it is highly unusual for a manufacturer to put a product in the field without such a pilot run. Following the pilot run there are essentially three to four different levels of tests to determine conformance to production and engineering specifications in emissions standards, which are all part of the testing process of original equipment manufacturers. Though not employed by Borg-Warner until September 1980, Hoekstra, who had access to Borg-Warner test records, testified that his review of these records revealed that these test procedures were not performed by Borg-Warner engineers with respect to the Acucarb.

damages may be recovered in Florida for malice, moral turpitude, wantonness, or outrageousness. *ABC–Paramount Records, Inc. v. Tops Records Distributing Co.*, 374 F.2d 455, 462 (5th Cir.1967). Malice can be inferred from an entire want of care or attention to a duty, or great indifference to the rights of others. *Id.* The evidence discussed as to the misrepresentation claim demonstrates a jury question as to whether punitive damages were proper.

 Dancey next challenges the district court's refusal to instruct the jury as to the effect Borg-Warner's continued assurances that it would conform the Acucarb to its warranties had upon the timeliness of Dancey's notice of breach. The district court instructed the jury that a notice of breach is sufficient if given "within a reasonable time after the [buyers] discovered or should have discovered [the breach]." The court's instruction is a full and correct statement of the law tracking the statutory provision on proper notice of a breach. Fla.Stat.Ann. § 672.607(3) and official comment 4. Continuing assurances are just one of many factors to be considered in determining whether or not notice is reasonably timely. Failure to instruct on the assurances does not foreclose arguing these assurances to the jury, allowing the jury to factor that into the reasonableness of the notice. Dancey argued to the jury in closing arguments its case regarding the continued assurances and the fact that these assurances excused Dancey from giving timely notice of breach. The trial judge's refusal to give the requested instruction was not reversible error.

 Lastly, Dancey challenges the district court's refusal to grant a new trial on the grounds that the verdict regarding failure to give timely notice was contrary to the manifest weight of the evidence. Sufficiency of the evidence is not reviewable on appeal unless a motion for direct verdict was made in the trial court at the close of all the evidence. *Liner v. J.B. Talley and Co.*, 618 F.2d 327, 331 (5th Cir.1980). Dancey made no such motion for directed verdict, and even his motion for new trial does not raise the issue of sufficiency of the evidence. We are thus precluded from reviewing this claim.

For the reasons set forth in this opinion, the decision of the district court is AFFIRMED in part; REVERSED and REMANDED in part.