**MILLER'S BOTTLED GAS, INC., Plaintiff,**

v.

**BORG–WARNER CORP., Defendant.**

**Civ. A. No. C85–0029–BG(H).**

United States District Court,
W.D. Kentucky,
at Bowling Green.

April 12, 1993.

**644**

Frank Miller, Jr., Boehl, Stopher, Graves & Deindoerfer, Louisville, KY, Karl N. Crandall, Bowling Green, KY, John R. Bush, Bush, Ross, Gardner, Warren & Rudy, Tampa, FL, for plaintiff.

Philip I. Huddleston, Bowling Green, KY, Hugh N. Smith, David S. Nelson, Smith & Fuller, P.A., Tampa, FL, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Having secured a verdict for fraud and compensatory damages, Plaintiff, Miller's Bottled Gas, Inc., moves for a new trial on the issue of punitive damages pursuant to Rule 60(b)(6). The procedural posture of this action is lengthy: Judge Boyce F. Martin, Jr. presided over the first jury trial and directed a verdict on the liability issue; the Sixth Circuit reversed and remanded for a new trial; a jury returned a verdict for Plaintiff at the second trial but the undersigned directed a verdict on the issue of punitive damages; thereafter, this Court denied cross-motions for a new trial; and the judgment is now on appeal.

### I.

In its response to Plaintiff's contention of error on the issue of punitive damages, the Court evaluated the propriety of its own directed verdict in this case by applying the same standard set forth by the Sixth Circuit in its review of the first round of directed verdicts in this case:

The only question to be determined by the court on a motion for directed verdict is whether the plaintiff has sustained the burden of proof by "more than a scintilla of evidence," that is, has the plaintiff submitted "evidence of probative value having fitness to induce conviction in the minds of reasonable men?" In so ruling, "[t]he court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion, and a verdict should not be directed unless the evidence is insufficient to sustain the verdict. The evidence of such party's witnesses must be accepted as true."

*Miller's Bottled Gas v. Borg–Warner Corp.*, 955 F.2d 1043, 1050 (6th Cir.1992) (citation omitted).

This Court exercised jurisdiction in this case on the basis of diversity of citizenship, and, therefore, applied the Kentucky law of punitive damages. Kentucky courts have followed the Restatement (Second) of Torts, which states, "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382 (Ky.1985) (citing the *Restatement (Second) of Torts* § 908(2) (1979)). Plaintiff contended that once a plaintiff has sustained its burden of production on the issue of fraud, an instruction on punitive damages is necessarily warranted under the common law of punitive damages. In other words, Plaintiff contended that fraud, in and of itself, warrants an instruction on punitive damages.

In support of its position, Plaintiff cited an "all-fours decision", *Dancey Co., Inc. v. Borg–Warner Corp.*, 799 F.2d 717 (11th Cir. 1986), in which another acucarb distributor, Dancey Co., Inc., like Plaintiff in this case, asserted similar claims against Borg–Warner. In *Dancey,* the court overruled the trial court's directed verdict on the liability issue and on the issue of punitive damages. *Id.* In a short-handed fashion, the Eleventh Circuit explained that its reversal of the directed verdict on the punitive damages issue was based on the same reasons elucidated in its ruling on the liability issue. *Id.* at 720–21.

This Court found *Dancey* unpersuasive because it involved the application of Florida law and because it did not discuss the issue at any length.[1]

Of significant consequence to this Court's ruling was *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382 (Ky.1985), a case which both parties cite in support of their adverse positions. In *Horton*, the Kentucky Supreme Court posited the rule of punitive damages in reliance on its own decisional law as well as scholarly authority, namely, the *Restatement (Second) of Torts* and *Prosser and Keeton on the Law of Torts*. The Kentucky Supreme Court not only emphasized the distinguishing element for punitive damages as having the "character of outrage", the court also indicated the separate and distinct quality of the punitive damages issue. *Id.* at 388–89. The high court stated that "punitive damages are not justified just because the injury was intentional." *Id.* at 389. Rather, punitive damages require a distinguishing factor from a civil wrong being "whether there [are] sufficient 'circumstances of aggravation or outrage' ". *Id.* at 388–89. The court illustrated this concept noting, first, that as with assault, punitive damages are not allowable if there is sufficient provocation and, second, that as with false arrest, punitive damages are not allowable absent a showing that the acts were either willful or malicious or performed in gross disregard for the rights of the person wronged. *Id.* at 389. It stands to reason that a punitive damages instruction heightens a plaintiff's burden of production.

Plaintiffs made much about the Court's assessment of the strength of its case, wherein the Court characterized it as "on the lower-end of the fraud scale". This statement was merely intended to *illustrate* the concept that punitive damages are appropriate only where there is a showing of a higher level of culpability than the tort theory, itself, intends to redress. Subsequent research has borne out the correctness of this view, if not the appropriateness of the illustration.

### II.

■ Plaintiff petitions this Court again on the even of a pre-argument conference before the Sixth Circuit on the basis of a recently published Kentucky Supreme Court decision, *Hanson v. American National Bank & Trust Co.*, 844 S.W.2d 408 (Ky.1992). Plaintiff argues that Kentucky law *mandates* the submission of instructions on punitive damages in fraud actions. Plaintiff has maintained this position throughout the litigation and, yet undaunted, returns to this Court asserting recent authority for its position.

*Hanson* states in pertinent part:

The Bank argues that Hanson established no basis for the award of punitive damages. In light of what has been said earlier in the opinion, we cannot accept such an argument. We have found that there is sufficient evidence and therefore reasonable grounds for submitting to the jury the issue of fraud and misrepresentation. Once the jury had found that the Bank intentionally misrepresented and deceived Hanson, an instruction on punitive damages should have been given and the jury afforded the opportunity to assess such sums as it considered appropriate.

*Id.* at 415. Indeed, the Kentucky trial court had instructed the jury about punitive damages and the jury awarded more than five million dollars. The Kentucky appellate court, however, reversed and remanded for remittitur of excessive punitive damages or a new trial on punitive damages. Although the defendant argued to the supreme court that a punitive damages instruction was unwarranted, the extent of the high court's rejection of this argument is captioned above. The supreme court then continued to thoroughly analyze the gravamen of the appeal, that is, whether the punitive damages award was excessive.

The brevity of the Kentucky court's treatment of the issue pertinent to the case at bar, therefore, gives this Court pause to

---

1. Plaintiff argues that this Court should find *Dancey* persuasive since Florida law is indistinguishable from the Kentucky law of punitive damages. Although the Court does not believe for reasons stated in this Opinion that the laws of these two states are in accord, it is clear that at least Florida law supports Plaintiff's position. *See First Interstate Development Corp. v. Ablanedo*, 511 So.2d 536 (Fla.1987).

educe the broad rule of law that Plaintiff asserts. Plaintiff maintains that the *Hanson* decision stands for the proposition that meeting the elements of fraud mandates an instruction on punitive damages. The Court again disagrees, particularly citing common sense and the supreme court's extensive discussion in *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382 (Ky.1985). The Court believes that the *Hanson* decision, given the persuasive weight that is due, requires a more precise interpretation. The *Hanson* court did *not* state that the especial nature of a fraud action divests a court of its discretion in assessing whether a plaintiff has met the burden of production on the issue of punitive damages. Nor did the *Hanson* court state that in a tort action for fraud, unlike any other tort, a plaintiff has no burden of production on the issue of punitive damages. *Hanson* lacks either express language or persuasive logic which would alter the Court's determination of the prevailing rule of law.

In *Horton* the Kentucky Supreme Court relied on *Prosser and Keeton on the Law of Torts*, albeit the fourth edition, for the rule requiring "*aggravating circumstances*" that "so *enhance* intentional injury that punitive damages are justified." *Horton* at 388–89. The high court ultimately held that punitive damages may be appropriate in gross negligence cases where there are, in fact, aggravating circumstances.

A complete reading of Prosser supports this Court's analysis as well:

> Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or "malice," or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called willful or wanton.
>
> \* \* \* \* \* \*
>
> Typical of the torts for which such damages may be awarded [is] deceit. But it is not so much the particular tort committed as the defendant's motives and conduct in committing it which will be important as the basis of the award.

W. Page Keeton et al, *Prosser and Keeton on the Law of Torts*, § 2, at 9–10, 11 (5th ed. 1984) (footnotes omitted).

Circumstances of aggravation and outrage can include "fraudulent motive," a distinct issue from fraudulent *intent*. It is only a matter of common sense to state that fraudulent intent does not necessarily or by definition entail fraudulent motive. Fraud does not always involve aggravating circumstances. For example, it is possible to defraud someone with the thought that a business venture will be profitable anyway. If such a motive is *not* fraudulent, then it is fair to say that a fraudulent motive is one that defrauds for the *very purpose* of fraud or for the purpose of harming another. It is in this vein that the use of the term "fraudulent motive" is understood as the equivalent of spite, malice, or evil motive.

Such a rule is in complete accord with KRS 411.184, which codified the proof necessary in a claim for punitive damages. Although enacted subsequently to this action, the Kentucky statute requires more than the tort elements of fraud. For purposes of punitive damages, "fraud" means "an intentional misrepresentation ... made with the intention of causing injury to the plaintiff." KRS 411.184. Thus, if the statute were applicable, Plaintiff would be clearly required to prove more than the mere commission of a fraud.

Neither Plaintiff's interpretation of the *Hanson* opinion nor the theoretical underpinnings of Plaintiff's position are persuasive. Because fraud requires proof of intent and not bad motive, it stands to reason that a punitive damages claim heightens the burden of production. Nevertheless, Plaintiff argues for a standard that leaves the trial judge with no discretion to determine the sufficiency of the evidence purporting to meet that burden. Where there exists a clear distinction between the sufficiency of evidence supporting fraudulent intent on one hand and evidence necessary to support aggravated fraudulent motive on the other hand, a trial judge must necessarily be called upon to make that distinction. Therefore, the Court will defer to the sound judgment of the Court of Appeals for the Sixth Circuit or the Kentucky Supreme Court to state an unequivocal rule of law to the contrary.

■ This Court having resolved the issue of law adverse to how Plaintiff would have it, the issue remains whether Plaintiff in fact carried its burden of production on the issue of punitive damages. In its Memorandum Opinion entered January 29, 1993, this Court stated that there was no showing—and certainty not more than a scintilla of evidence—that the fraud perpetrated involved "circumstances of aggravation or outrage" warranting a punitive damages instruction. In the Court's view, Plaintiff met its burden of production on the issue of fraudulent intent by only the barest of margins, much less a showing of aggravated circumstances.[2] There was no showing of spite, evil or fraudulent motive that so enhance the intentional tort to warrant an instruction on punitive damages. Therefore, the Court will let stand the directed verdict on the punitive damages issue for Plaintiff's failure to carry its burden of production on this issue.

The Court is entering an order consistent with this Memorandum Opinion.

### ORDER

This matter is before the Court on Plaintiff's motion for a new trial pursuant to Rule 60(b)(6). The Court having reviewed the *Hanson* decision and the memoranda in this case and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion is OVERRULED.

---

2. To be blunt, absent the Sixth Circuit's previous ruling, this Court may well have been persuaded to follow the same course Judge Martin chose in the first trial—that is granting directed verdict on the entire case.