[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11286

_____

D.C. Docket No. 0:18-cv-61788-WPD,
Bkcy No. 0:17-bkc-17656-RBR

In re:  KEVIN HARRIS,

Debtor.

_____

KEVIN HARRIS,

Plaintiff - Appellant,

versus

JAMES F. JAYO,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 14, 2021)

Before JORDAN, MARCUS, and GINSBURG,[*] Circuit Judges.

JORDAN, Circuit Judge.

The Bankruptcy Code contains a number of exemptions from discharge. One is for "any debt . . . for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The main question presented in this appeal is whether a Florida default judgment against a debtor, based on a multi-count complaint, can satisfy the requirements of § 523(a)(2)(A) through the doctrine of collateral estoppel.[1]

## I

The United States experienced a financial crisis (some would say meltdown) in 2008. *See generally* Andrew Ross Sorkin, Too Big to Fail (2009); Nat'l Comm'n on the Causes of the Financial Crisis in the United States, The Financial Crisis Inquiry Report (2011); Ben S. Bernanke, Timothy F. Geithner, & Henry M. Paulson, Jr., Firefighting: The Financial Crisis and Its Lessons (2018). That year, while the S&P 500 was losing 37% of its value, Kevin Harris promised James Jayo a 15% annual rate of return if he invested in his two companies—Wall Street Precious

---

[*] The Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

[1] Florida courts refer to collateral estoppel, judgment by estoppel, and issue preclusion interchangeably. *See, e.g., Stogniew v. McQueen*, 656 So.2d 917, 919 (Fla. 1995); *Lambert Bros., Inc. v. Mid-Park, Inc.*, 185 So.3d 1266, 1269 (Fla. 4th DCA 2016). Like the parties and the courts below, we will use the term collateral estoppel.

Metals, Inc., and International Bullion and Coin Exchange, Inc.  Mr. Jayo agreed to invest, and in exchange for ownership interests in the companies, he gave Mr. Harris more than $600,000 (in direct investments and loans) over a five-year period.  He also allowed Mr. Harris to use his American Express card to purchase over $300,000 in inventory, and he personally guaranteed some loans taken out by the companies.

Given that this case ended up in court, no one will be surprised to learn that by 2015 Mr. Jayo had recouped a little less than $60,000 of his outlay.  But according to Mr. Jayo, his misfortune was not simply the result of a poor investment or the global economic downturn.  He claimed that Mr. Harris had essentially converted or stolen the companies' assets for his own personal benefit. So he sued Mr. Harris (and Marc Spiewak) in a Florida state court, asserting a number of claims, including fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, conversion, unjust enrichment, investment fraud in violation of Fla. Stat. § 517.301, unfair and deceptive trade practices in violation of Fla. Stat. § 501.21 et seq, and conspiracy to defraud.

Mr. Harris answered the complaint, but then engaged in some questionable conduct, such as lying to the state court about having suffered a heart attack in order to obtain a continuance or delay of the proceedings.  The state court eventually struck his answer and entered a $1.8 million default judgment against him as a sanction for his behavior.  Neither the order granting a default nor the default judgment (which

3

was general in nature) said anything about Mr. Jayo's claims or specified which of the claims supported the monetary award. *See* D.E. 7-3, 7-4.

When Mr. Harris filed for Chapter 7 bankruptcy protection, Mr. Jayo (proceeding *pro se*) filed an adversary proceeding seeking to have the debt created by the default judgment declared non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Following a bench trial, the bankruptcy court relied on *In re Bush*, 62 F.3d 1319 (11th Cir. 1995) (involving a federal court default judgment), applied collateral estoppel, and ruled that the debt created by the Florida default judgment was non-dischargeable. Mr. Jayo had in part alleged fraud on the part of Mr. Harris in the Florida action, and the state court had entered a default judgment in which it accepted all of Mr. Jayo's allegations as true.

Mr. Harris appealed to the district court, challenging the § 523(a)(2)(A) determination as well as certain evidentiary rulings made by the bankruptcy court. In two separate orders, the district court affirmed. As to nondischargeability, the district court also relied on *Bush* and concluded that the elements of Mr. Jayo's fraud-based claims were conclusively established by the default judgment. As a result, the debt was not dischargeable under § 523(a)(2)(A). *See* D.E. 20 at 5. With respect to the bankruptcy court's evidentiary rulings, the district court noted that Mr. Harris may not have preserved all of his objections, but even if he did the bankruptcy court had not abused its discretion. *See* D.E. 27 at 4.

4

## II

Although collateral estoppel may bar the relitigation of "issues previously decided in state court," the "ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability." *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993) (citing *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir. 1987)). *See also In re Collins*, 946 F.2d 815, 816 (11th Cir. 1991) (exercising plenary review as to dischargeability determination under § 523(a)(2)(B)). Our review, therefore, is plenary.

## A

*St. Laurent*, which involved the application of collateral estoppel to a Florida judgment in determining whether a debt was non-dischargeable under § 523(a)(2)(A), resolves a number of preliminary questions. First, as a matter of federal law, "[c]ollateral estoppel principles apply to dischargeability proceedings [under § 523(a)(2)(A)]." *St. Laurent*, 991 F.2d at 675. *See also Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). Second, because the default judgment against Mr. Harris was issued by a Florida court, we apply the collateral estoppel law of Florida to determine "the judgment's preclusive effect." *St. Laurent*, 991 F.2d at 676. *See also Marrese v. Am. Acad. of Orthopaedic*

*Surgeons*, 470 U.S. 373, 380 (1985) (holding that the full faith and credit statute, 28 U.S.C. § 1738, "directs a federal court to refer to the preclusion law of the State in which judgment was rendered").

The bankruptcy court and the district court relied on our decision in *Bush*, but that reliance was in part misplaced. *Bush* was decided under federal preclusion principles because the underlying judgment there had been issued by a federal court. *See Bush*, 62 F.3d at 1321-22. As noted, we must apply Florida preclusion law in this case.[2]

The wrinkle here is that the Florida judgment against Mr. Harris was a general default judgment based on Mr. Jayo's multi-count complaint. Because we have left open what effect to give a state-court default judgment in a § 523(a)(2)(A) dischargeability proceeding, *see Bush*, 62 F.3d at 1323 n.6, we need to determine how Florida courts treat default judgments and how they apply collateral estoppel to such judgments. Before doing that, we summarize the requirements of § 523(a)(2)(A).

---

[2] If decided today, *Bush* would look to Florida preclusion law because federal jurisdiction in that case was based on diversity. Although we previously applied federal preclusion principles to federal judgments, "whether . . . decided in diversity or federal question jurisdiction," *CSX Transp., Inc. v. Brotherhood of Maintenance Way Employees*, 327 F.3d 1309, 1316 (11th Cir. 2003), we have since held that "federal common law adopts the state rule of collateral estoppel to determine the preclusive effect of a judgment of a federal court that exercised diversity jurisdiction." *CSX Transp., Inc. v. General Mills, Inc.*, 846 F.3d 1333, 1335 (11th Cir. 2017).

**B**

"The statutory provisions [of the Bankruptcy Code] governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts," on the theory that some categories of debt "outweigh[ ] the debtors' interest in a complete fresh start." *Grogan*, 498 U.S. at 287. Fraud is one such category of debt, and "[c]ourts have generally interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud." *In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998) (*Bilzerian II*). As the creditor, Mr. Jayo had to prove the following by a preponderance of the evidence to establish non-dichargeability under § 523(a)(2)(A): (1) that Mr. Harris used false pretenses, or made a false representation, or committed actual fraud; (2) that he relied on Mr. Harris' conduct; (3) that his reliance was justified; and (4) that Mr. Harris' conduct caused his loss. *See id.*; *In re Bilzerian*, 100 F.3d 886, 892 (11th Cir. 1996) (*Bilzerian I*). *See also Field v. Mans*, 516 U.S. 59, 74-75 (1995) ("§ 523(a)(2)(A) requires justifiable, but not reasonable, reliance").

Consistent with our decision in *Bilzerian II*, a leading bankruptcy treatise explains that the false pretense and false representation prongs of § 523(a)(2)(A) each require an "intentional wrong"—the false pretense or the false representation "must have been knowingly and fraudulently made." 4 Collier on Bankruptcy, ¶ 523.08[1][d] (16th ed. 2018) (collecting circuit and district court cases). "Such a

construction . . . is consonant with equity, and consistent with the object and intention of Congress in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency." *Neal v. Clark*, 95 U.S. 704, 709 (1877).

The actual fraud prong "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation. . . . [A]nything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Husky Int'l Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016). *See also id.* at 1587 (declining to set out a definition of fraud "for all times and circumstances"). As relevant here, "§ 523(a)(2)(A) prevents the discharge of all liability arising from fraud, and . . . an award of treble damages therefore falls within the scope of the [exemption]." *Cohen v. De la Cruz*, 523 U.S. 213, 215 (1998).

Neither Mr. Jayo nor Mr. Harris take issue with any of these general principles. We decide this case, therefore, on the understanding that Mr. Jayo had to show intentional misconduct on the part of Mr. Harris.

"[T]he issue of nondischargeability [is] a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan*, 498 U.S. at 284. Not only must Mr. Jayo establish nondischargeability by a preponderance of the evidence, but "[i]ntertwined with this burden is the basic principle of bankruptcy that exceptions

to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997). *See also Gleason v. Thaw*, 236 U.S. 558, 562 (1915) ("In view of the well-known purposes of the bankrupt law, exceptions to the operation of a discharge thereunder should be confined to those plainly expressed.").

## C

The "essential elements" of collateral estoppel in Florida are that "'the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction.'" *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 945 So.2d 1216, 1235 (Fla. 2006) (quoting *Dept. of Health & Rehab. Servs. v. B.J.M.*, 656 So.2d 906, 910 (Fla. 1995)). Several of our cases repeat the same Florida standard. *See, e.g., Winn-Dixie Stores, Inc. v. Dolgencorp LLC*, 746 F.3d 1008, 1036 (11th Cir. 2014) (listing "identical issue" as the first element and phrasing the other elements slightly differently). Some cases, however, add a "critical and necessary" element. *See, e.g., Crowley Maritime Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 931 F.3d 1112, 1126 (11th Cir. 2019); *Acadia Partners, L.P. v. Tompkins*, 759 So.2d 732, 738 (Fla. 5th DCA 2000).

The parties argue that this case hinges on whether this critical-and-necessary element exists—and, if so, how it applies in default judgment cases. Indeed, bankruptcy courts in Florida applying § 523(a)(2)(A) have split on this subsidiary question of state law. *Compare In re Green*, 262 B.R. 557, 567 (Bankr. M.D. Fla. 2001) (declining to give preclusive effect to a Florida default judgment in a multi-count action because if "the final judgment awards only a single monetary amount without designating the cause of action to which the award relates or specifying a basis for the award, it cannot be known whether any particular cause of action was 'essential' to the final judgment"), *with In re Bentov*, 514 B.R. 907, 914 (Bankr. S.D. Fla. 2014) (giving preclusive effect to a default judgment in a multi-count action and deeming each claim critical and necessary because "when a judgment stems from a default, each count is proven"). But we need not consider this thorny question of Florida law unless we determine, as an initial matter, that the issues in the Florida action and the dischargeability proceeding are indeed identical.[3]

---

[3] We appointed Jesse Panuccio, Esq., as *amicus curiae* to brief whether a Florida default judgment based on a multi-count complaint establishes that each of the causes of action is a "critical and necessary" part of the judgment for purposes of collateral estoppel under Florida law. In his brief, Mr. Panuccio concludes that, despite language in some state cases, *see, e.g., Marquardt v. State*, 156 So.3d 464, 481 (Fla. 2015) (dicta), and some federal cases, *see, e.g., St. Laurent*, 991 F.2d at 676, Florida law does not include a "critical and necessary" element for collateral estoppel. Mr. Panuccio traces most of the divergence to a miscite of *B.J.M.* in *Acadia Partners*, 759 So.2d at 738. Although we need not resolve the issue that Mr. Panuccio has flagged for us, we thank him for his good work and assistance.

"Florida case law does not discuss in any great detail the standard for measuring the identity of issues." *Winn-Dixie Stores, Inc.*, 746 F.3d at 1036. Given this lack of guidance, we said in *Winn-Dixie Stores* that one factor in evaluating identity is whether the second proceeding "involve[s] application of the same rule of law as that involved in the prior proceeding." *Id.*

Other courts have observed that, "[i]n the bankruptcy setting, the identity of issues is 'the most difficult element' of the collateral estoppel test." *In re Cohen*, 92 B.R. 54, 70 (Bankr. S.D.N.Y. 1988) (quoting *In re Barigian*, 72 B.R. 407, 410 (Bankr. C.D. Cal. 1987)). *See also Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006) ("The more difficult question is whether the issue of fraud under § 523(a) of the Bankruptcy Code was identical to an issue that necessarily was decided by the state court."). "Because of the difficulty in determining whether there is an identity of issues between state court actions and subsequent dischargeability actions, '[a]ny reasonable doubt as to what was decided by a prior judgment . . . should be resolved against using it as an estoppel.'" *In re Kuncman*, 454 B.R. 276, 283 (Bankr. E.D.N.Y. 2011) (quoting *Cohen*, 92 B.R. at 70-71).

The Supreme Court, in holding that exceptions to discharge must be proven by a preponderance of the evidence, has explained that a bankruptcy court can "properly give collateral estoppel effect to those *elements of the claim that are identical to the elements* required for discharge and which were actually litigated

11

and determined in the prior action." *Grogan*, 498 U.S. at 284 (emphasis added). This approach is, we think, consistent with Florida law. For example, in *Sun State Roofing Co., Inc. v. Cotton States Mutual Ins. Co.*, 400 So. 2d 842, 844 (Fla. 2d DCA 1981), the Second District held that collateral estoppel does not apply when the prior judgment is based on a general verdict which makes it impossible to tell which theory or claim the jury accepted. *See id.* ("When a party relies upon the defense of collateral estoppel or estoppel by judgment he must demonstrate that the issue to be barred from relitigation was determined in a previous suit."). *Accord Fulton v. Gesterding*, 36 So. 56, 59 (Fla. 1904) ("[I]f it appears from the record of a former judgment offered in evidence as an estoppel that several distinct matters may have been litigated, upon one or more of which the judgment was rendered, the whole subject matter will be at large, and open to a new contention, unless the uncertainty be removed by extrinsic evidence showing the precise point involved and determined.").

In this sense, the "identical issue" requirement and the "determined" requirement overlap. The issue previously presented and determined must be identical to the one currently before the court being asked to apply collateral estoppel. *See, e.g., Evans*, 469 F.3d at 282 (applying New York collateral estoppel law and noting that the question is "whether the elements of fraud under New York law are identical to the elements of fraud under the Bankruptcy Code").

**D**

We first consider whether the elements of Mr. Jayo's fraud-based claims are identical to the elements of fraud under § 523(a)(2)(A). In other words, we ask whether the nondischargeability proceeding "involve[s] application of the same rule of law as that involved in the prior proceeding." *Winn-Dixie Stores*, 746 F.3d at 1036.

To recap what we said earlier, under § 523(a)(2)(A) Mr. Jayo had to establish a number of things by a preponderance of the evidence to render the $1.8 million debt non-dischargeable. He had to prove (1) that Mr. Harris used false pretenses, or made a false representation, or committed actual fraud; (2) that he relied on Mr. Harris' conduct; (3) that his reliance was justified; and (4) that Mr. Harris' conduct caused his loss. *See Bilzerian II*, 153 F.3d at 1281.

Mr. Jayo's state-court complaint asserted a number of claims that included allegations of fraud or fraudulent behavior and that could potentially satisfy the requirements of § 523(a)(2)(A). *See* Complaint, *Jayo v. Harris*, No. 2015-CA-000142 (Fla. 4th Circuit Court, Nassau Cty.) (Apr. 20, 2015) (Florida Complaint). These claims were a fraudulent representation claim; a negligent misrepresentation

claim; an investment fraud claim under Fla. Stat. § 517.301; and a conspiracy to defraud claim.[4]

Assuming without deciding that a general default judgment can be the basis of collateral estoppel under Florida law in a § 523(a)(2)(A) proceeding as to each of the claims asserted in a multi-count complaint, *see Bentov*, 514 B.R. at 913-14, we hold that estoppel does not apply here. Simply stated, each of the claims that could have satisfied the requirements of § 523(a)(2)(A) contained alternative factual allegations that did not do so. In such a scenario—one so far not addressed by Florida law—we predict that Florida courts would not afford preclusive effect to a general default judgment that does not specify its grounds. *See* Restatement

---

[4] Mr. Jayo also asserted claims for a false statement in writing in violation of Fla. Stat. § 817.03, making false entries on the books of the two companies in violation of Fla. Stat. § 817.15, and issuing certificates of stock for the two companies beyond the amount authorized by law in violation of Fla. Stat. § 817.20. For each of those claims, Mr. Jayo asserted that Mr. Harris acted with intent to defraud and/or to obtain his money or property. *See* Florida Complaint, at ¶¶ 58, 63, 68.

All of these statutorily-based claims may be covered by § 523(a)(2)(B), which exempts from discharge a "debt for money [or] property . . . to the extent obtained by . . . [the] use of a statement in writing (i) that is materially false; (ii) respecting the debtor's . . . financial condition; (iii) on which the creditor . . . reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive[.]" The Supreme Court has held that a "statement" under this provision is the act of stating, reciting, or presenting something, and that a "statement is 'respecting' a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759, 1761 (2018). As a result, a "statement about a single asset can be a 'statement respecting the debtor's financial condition.'" *Id*. at 1761 (quoting § 523(a)(2)(B)). Because § 523(a)(2)(A) and § 523(a)(2)(B) are mutually exclusive, *see* 4 Collier on Bankruptcy, at ¶ 523.08[2], and because the parties have not briefed whether the Florida statutory claims listed above can satisfy § 523(a)(2)(B), we do not address these claims today. The bankruptcy court is free to analyze them on remand.

(Second) of Judgments § 27, cmt. i (1982) ("*Alternative determinations by court of first instance.* If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone."). *Cf. Topps v. State*, 865 So.2d 1253, 1258 (Fla. 2004) ("[U]nelaborated orders denying relief in connection with all extraordinary writ petitions issued by Florida courts shall *not* be deemed to be decisions on the merits which would later bar the litigant from presenting the issue under the doctrines of res judicata or collateral estoppel unless there is a citation to authority or other statement that clearly shows that the issue was considered by the court on the merits and relief was denied."); *In re Nourbakhsh*, 162 B.R. 841, 846 (9th Cir. B.A.P. 1994) (2-1 decision affording collateral estoppel effect under Florida law to a Florida default judgment, which was based on a number of claims, because the judgment included findings that the debtor engaged in a scheme to defraud and a pattern of racketeering activity), *aff'd*, 67 F.3d 798 (9th Cir. 1995).[5]

---

[5] This case involves a general default judgment, and not a judgment which includes express, specific, and alternative grounds or findings. Nevertheless, a general default judgment based on a multi-count complaint is somewhat analogous to a judgment with alternative grounds or findings. Florida courts, moreover, have cited to § 27 of the Restatement (Second) of Judgments with approval. *See M.C.G. v. Hillsborough Cty. Sch. Bd.*, 927 So.2d 224, 227 (Fla. 2d DCA 2006); *Cook v. State*, 921 So.2d 631, 634 (Fla. 2d DCA 2005); *Dempsey v. Law Firm of Cauthen & Odham, P.A.*, 752 So.2d 107, 110 (Fla. 5th DCA 2000). For the sake of completeness, we note that the Restatement (First) of Judgments took a contrary view as to the preclusive effect of a

15

In our view, when a complaint alleges several alternative (and inconsistent) factual grounds for a legal claim, and each of those grounds would be independently sufficient to establish the claim, it is impossible to tell which of the grounds a general default judgment was based on. And if one of those alternative factual grounds is insufficient to meet the elements of fraud under the Bankruptcy Code, the issues cannot be deemed identical. To put it in the terminology of Florida collateral estoppel law, *see Dadeland Depot*, 945 So.2d at 1235, if the issues are not identical then the question of fraud—for purposes of nondischargeability proceedings under § 523(a)(2)(A)—was not "determined" by the prior default judgment. *See In re Bogdanovich*, 292 F.3d 104, 112 (2d Cir. 2002) ("[E]ven assuming . . . the bankruptcy and district courts were correct in ruling that the Spencers [the creditors] had alleged at least some cognizable claims [in their underlying suit] barring the dischargeability of the bankrupt's debt, it is not possible to know whether the underlying . . . jury verdict rests on those same claims."); *In re Jenkins*, 607 B.R. 270, 285-86 (Bankr. N.D. Tex. 2019) (applying Texas collateral estoppel law and refusing to give preclusive effect to a general default judgment which could have been based on theories and allegations that did not satisfy § 523(a)(2)(A)).

---

judgment based on alternative grounds. *See generally Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 251-52 (3d Cir. 2006) (discussing the different approaches).

16

With these concepts in mind, we review each of Mr. Jayo's fraud-related claims below.

**Fraudulent Misrepresentation.** A fraudulent misrepresentation claim under Florida law has four elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010) (citation omitted and emphasis deleted). Based on the phrasing of the second element in *Butler*, one might think that actual knowledge of falsity is always required. But that is not so. The Florida Supreme Court has held that the scienter element of fraudulent misrepresentation can be established in a number of ways, and not all of them involve knowledge of falsity: "The knowledge, by the maker of the representation, of its falsity, . . . can be established by either one of the three following phases of proof: (1) [t]hat the representation was made with actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; [or] (3) under circumstances in which the person making it ought to have known, if he did not know, of its falsity." *Joiner v. McCullers*, 28 So.2d 823, 824 (Fla. 1947). *See also Dancey Corp. v. Borg-Warner Corp.*, 799 F.2d 717, 719 (11th Cir. 1986) (same).

17

In his fraudulent misrepresentation claim, Mr. Jayo alleged that Mr. Harris "knew *or should have known* the[ ] representations were false." Florida Complaint, at ¶ 19 (emphasis added). For the reasons articulated earlier, we cannot tell on what basis the general default judgment was entered with respect to the fraudulent misrepresentation claim. Because the default judgment as to this claim could have been based on a "should have known of the falsity" theory, as opposed to an "actual knowledge of the falsity" theory, it cannot serve as the basis for collateral estoppel against Mr. Harris under § 523(a)(2)(A). *See Bogdanovich*, 292 F.3d at 112. *See also In re Goldbronn*, 263 B.R. 347, 362 (Bankr. M.D. Fla. 2001) (declining to give collateral estoppel effect in a § 523(a)(2)(A) proceeding to an arbitration judgment under Fla. Stat. § 517.301 in part due to the lesser scienter requirement: "In this case, the issue of intent proved by the plaintiff [under § 517.301] in the arbitration was a substantially lesser kind of intent than the intent required to be proved under [§] 523(a)(2)(A). Because these intent issues are not identical, the plaintiff cannot satisfy the first prong of collateral estoppel.").

**Negligent Misrepresentation.** Under Florida law, a negligent misrepresentation claim does not require the defendant's knowledge that the misrepresentation was false. A plaintiff can prevail on a lesser showing—that the defendant made the misrepresentation "without knowledge of its truth or falsity" or that the defendant "should have known the representation was false." *Osorio v. State*

18

*Farm Bank, F.S.B.*, 746 F.3d 1242, 1259 (11th Cir. 2014) (setting out the elements of a negligent representation claim under Florida law).

In his negligent misrepresentation claim, Mr. Jayo alleged that Mr. Harris "was *negligent* in making [certain] representations because he knew *or should have known* [they] were false." Florida Complaint, at ¶ 34 (emphasis added). Although Mr. Jayo's complaint satisfied the elements of negligent misrepresentation under Florida law, the complaint did not allege an intentional misrepresentation, as required by the Bankruptcy Code. *See Neal*, 95 U.S. at 709 ("'fraud' referred to in that section [on exceptions to discharge] means positive fraud, or fraud in fact . . . and not implied fraud, or fraud in law"). *See also In re Villa*, 261 F.3d 1148, 1151 (11th Cir. 2001) (citing *Neal* for the principle that "the Bankruptcy Code's fraud exception to discharge requires proof of actual fraud rather than constructive or implied fraud"). Because neither negligence nor constructive fraud suffices under § 523(a)(2)(A), the default judgment on the negligent misrepresentation claim does not have collateral estoppel effect under Florida law. *See Jenkins*, 607 B.R. at 286 ("[N]egligent misrepresentation does not equate to false pretenses, a false representation[,] or actual fraud for purposes of nondischargeability under [§] 523(a)(2)(A).").

**Investment Fraud under § 517.301.** Under Fla. Stat. § 517.301, the elements of a claim for investment fraud are "(1) a misrepresentation; (2) of a material fact;

(3) on which the investor relied." *Kashner Davidson Sec. Corp. v. Desrosiers*, 689 So.2d 1106, 1107 (Fla. 2d DCA 1997). Significantly, however, intent to defraud is not required, and "the scienter requirement under Florida law is satisfied by a showing of mere negligence[.]" *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1046 (11th Cir. 1987) (citing *Merrill Lynch, Pierce, Fenner and Smith v. Byrne*, 320 So.2d 436, 440 (Fla. 3d DCA 1975)).

With respect to the investment fraud claim, Mr. Jayo alleged that Mr. Harris "employed a device, scheme or artifice to defraud; obtained money or property by means of untrue statements of material fact or omissions of material fact; *and/or* engaged in transactions, practices, or courses of business which *operated as a fraud or deceit*[.]" Florida Complaint at ¶ 53 (emphasis added). Because Mr. Jayo alleged conduct which merely "operated" as a fraud, and because intent to defraud is not a necessary element of an investment fraud claim under § 517.301, we conclude that the default judgment on this claim does not have collateral estoppel effect under Florida law in a § 523(a)(2)(A) proceeding. Again, the issues are not identical. *See Bogdanovich*, 292 F.3d at 112; *Goldbronn*, 263 B.R. at 362.

**Conspiracy to Defraud.** In Florida, "[t]he elements of a civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in furtherance of the conspiracy, and (d) damage to the plaintiff as a result of the acts performed pursuant

20

to the conspiracy." *Walters v. Blankenship*, 931 So.2d 137, 140 (Fla. 5th DCA2006). Mr. Jayo's complaint recited these elements almost verbatim, alleging that Mr. Harris and Mr. Spiewak (the other defendant) "conspired to defraud and steal from [him], took overt acts in furtherance of the conspiracy, and [he] has been damaged as a result of the acts performed pursuant to the conspiracy." Florida Complaint, at ¶ 79.

As the Fifth Circuit has recognized—in a § 523(a)(2)(A) case involving an underlying judgment on a Texas civil conspiracy claim with similar elements to those under Florida law—"the traditional elements of nondischargeability under § 523(a)(2)(A) are not identical to the elements of a civil conspiracy to defraud." *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995), *overruled in part on other grounds as recognized by In re Ritz*, 832 F.3d 560, 565 n.3 (5th Cir. 2016). Accordingly, collateral estoppel can be applied only if the "factual issue that forms the basis for the creditor's theory of nondischargeability has been actually litigated in [the] prior proceeding." *Id.* at 1294. Here, it is not clear from the allegations in Mr. Jayo's complaint whether the unnamed "overt acts" included false pretenses, false representations, or actual fraud. Nor it is clear whether it was Mr. Jayo or Mr. Spiewak who performed any of the overt acts which might have satisfied

21

§ 523(a)(2)(A).  So there is no identity of the issues, and the conspiracy to defraud claim does not have collateral estoppel effect.

### III

For each of the fraud-based claims that could have conceivably satisfied the requirements of § 523(a)(2)(A), Mr. Jayo included alternative factual allegations which did not do so.  Because it is impossible for us to tell on which factual ground the general default judgment rested for each of those claims, that judgment does not have collateral estoppel effect in the § 523(a)(2)(A) proceeding.  The decisions of the bankruptcy and district courts are therefore reversed, and the case is remanded for another § 523(a)(2)(A) proceeding at which Mr. Jayo can try to establish— without the benefit of collateral estoppel—that the $1.8 million debt owed by Mr. Harris (or some part of it) is not dischargeable. Mr. Jayo can also attempt to establish that his claims under Fla. Stat. §§ 817.03, 817.15, and 817.20 satisfy § 523 (a)(2)(A) or § 523(a)(2)(B).[6]

**REVERSED AND REMANDED.**

---

[6] Because we remand for a new proceeding, we do not reach Mr. Harris' evidentiary challenges.

22